## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **WARD KRAFT, INC.** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **TWIN CITY FIRE INSURANCE** | ) | |
| **COMPANY** | ) | |
| | ) | **Case No.** |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UMB BANK, N.A.** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **FARRIS BOBANGO PLC** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.      Twin City Fire Insurance Company (Twin City) is an insurance company organized under the laws of Indiana with its principal place of business in Connecticut and is deemed to be a citizen of Indiana and Connecticut.

2.      Ward Kraft, Inc. (Ward Kraft) is a Kansas corporation with its principal place of business in Kansas and is deemed to be a citizen of Kansas.

3.      UMB Bank, N.A. (UMB) is a national banking association with its principal place of business located in Kansas City, Missouri, and is deemed to be a citizen of Missouri.

4.      Farris Bobango PLC (Farris Bobango) is a professional limited liability company organized under the laws of Tennessee with its principal place of business in Tennessee, and upon

information and belief, none of its members are citizens of the state of Kansas. Accordingly, Farris Bobango is deemed to be a citizen of states other than Kansas.

5.     Upon information and belief from the Secretary of State of Tennessee, Farris Bobango also uses the assumed names of Farris Mathews Bobango PLC, and Farris Bobango Brannan PLC.

6.     Jurisdiction is proper in this Court based upon 28 U.S.C. § 1332, in that all plaintiffs are citizens of different states than all defendants, and the amount in controversy exceeds $75,000.

7.     Venue is proper in this Court pursuant to the contractual venue provisions in Ward Kraft's account agreement with UMB.

8.     Furthermore, venue is proper in this Court because this case concerns breach of fiduciary duty and tort claims where the place of injury is in the District of Kansas.

9.     Pursuant to the account agreement, UMB has consented to jurisdiction in this Court.

10.     Farris Bobango is subject to personal jurisdiction in this Court pursuant to K.S.A. 60-308, in that Farris Bobango committed tortious acts within Kansas. Also, upon information and belief, Farris Bobango believed it was representing Ward Kraft, a Kansas resident, in the purchase of equipment. Furthermore, Farris Bobango intentionally directed actions in the State of Kansas by accepting a check from Ward Kraft, targeting Ward Kraft as a purported client of Farris Bobango and intending to act as an escrow agent for Ward Kraft. Moreover, Farris Bobango knew that the brunt of any injury to Ward Kraft based upon Farris Bobango's actions or omissions as a law firm and/or escrow agent would be felt by Ward Kraft in Kansas.

## Factual Background

### A.  Facts related to the unauthorized payment of the altered check.

11.     Ward Kraft is a company located in Fort Scott, Kansas.

2

12.     At all material times, UMB was in the business of offering banking services including checking accounts to its customers.

13.     At all material times, Ward Kraft was a customer of UMB, and had a checking account with UMB.

14.     Ward Kraft's business relationship with UMB is governed by the signature card, account agreement, and the uniform commercial code as adopted by Kansas.

15.     Pursuant to the signature card, account agreement, and the uniform commercial code, UMB was only permitted to pay checks that were authorized and properly payable.

16.     As part of its business operations, Ward Kraft owed $7,500.00 to a vendor in Ontario, Canada, named Arcis Digital Security Inc. (Arcis).

17.     On April 9, 2018, Ward Kraft authorized the issuance of check no. 1104307 in the amount of $7,500.00 payable to Arcis, and Ward Kraft then mailed the authorized check to Arcis.

18.     At some point after Ward Kraft mailed the authorized check, the authorized check was intercepted by a person or persons intending to commit fraud.

19.     The fraudster then engaged in a scheme in which the fraudster alters a check and then utilizes law firms to place the altered check in the law firm's IOLTA account, and then instructs the law firm to wire the funds to accounts controlled by the fraudster.

20.     Upon information and belief based upon correspondence from Farris Bobango, Farris Bobango attorney, Scott Williams, received an email from an individual purporting to be an individual named Chris F. Williams, who was purportedly seeking assistance with closing service for the purchase of an excavator. In reality, Chris F. Williams was a pseudonym for the person or persons intending to commit fraud.

21.     Upon information and belief, Scott Williams replied to the email and agreed that he and Farris Bobango would provide closing service for the purchase of the excavator, in exchange for $4,800.00.

22.     The fraudster then altered the check written by Ward Kraft to Arcis by altering the Payee to Farris Bobango Brannon PLC, altering the date of the check to April 30, 2018, and altering the amount to $247,500.00.

23.     On May 3, 2018, Farris Bobango then deposited the check in its IOLTA account with Triumph Bank.

24.     UMB paid the altered check in the amount of $247,500.00 on May 4, 2018.

25.     On May 9, 2018, Farris Bobango transferred $4,800.00 of the funds to its own account purportedly for attorneys' fees.

26.     On May 14, 2018, Farris Bobango wired $230,000.00 of the funds to an account controlled by the fraudster.

27.     On May 16, 2018, Farris Bobango attempted to wire the balance of the funds, $8,038.55, to an account controlled by the fraudster. However, those funds were returned to Farris Bobango by the receiving bank.

28.     On June 7, 2018, Farris Bobango transferred the remaining $8,038.55 to an account controlled by the fraudster.

**B. Facts relating to Ward Kraft's discovery of the fraud.**

29.     The bank statement which identified that UMB paid the altered check in the amount of $247,500.00 was dated May 14, 2018.

30.     Within a few days after receiving the UMB statement, Ward Kraft discovered the improper payment of $247,500.00.

31.     Ward Kraft's chief financial officer immediately informed UMB by phone of the unauthorized payment.

32.     UMB then forwarded a fraudulent item affidavit, which was signed by Ward Kraft's CFO on May 29, 2019.

33.     UMB then forwarded an amended fraudulent item affidavit, which was signed by Ward Kraft's CFO on June 6, 2018.

34.     Despite being informed that the check was altered and not properly payable and receiving the documents requested of Ward Kraft, UMB has failed to credit Ward Kraft's account for the unauthorized payment of $247,500.00.

35.     Despite being informed that the check was altered, fraudulent and not properly payable, Farris Bobango has not paid any amount to Ward Kraft. Instead, Farris Bobango has alleged that it "acted appropriately in regard to the subject transaction."

**C.  Facts relating to Twin City's payment to Ward Kraft under its insurance policy.**

36.     Because UMB and Farris Bobango failed to reimburse Ward Kraft for its loss of $247,500.00, Ward Kraft made a claim under a policy of insurance issued by Twin City pursuant to the Crime Coverage part of the policy.

37.     The policy provided Ward Kraft with coverage for amounts lost by Ward Kraft as a result of altered checks, among other provisions, less a $10,000.00 retention. The policy also provided Ward Kraft with coverage for investigative expenses.

38.     Ward Kraft incurred $23,148.50 in investigative expenses in connection with this loss.

39.     Pursuant to the policy, Twin City paid Ward Kraft $260,648.00, which was the amount of the check and investigative expenses, less the $10,000.00 retention.

40.     Twin City is subrogated to the rights of Ward Kraft to pursue the amounts paid by Twin City pursuant to the policy.

41.     On March 15, 2019, Ward Kraft executed an assignment agreement whereby it assigned, sold, transferred and set over to Twin City all of its rights, title and interest in relation to any and all items claimed in and by the proof of loss related to the altered check described herein.

**D.  Additional factual allegations related to the fraudulent scheme.**

42.     Scams targeting law firms have become commonplace in the United States, and bar associations, including the Tennessee bar associations, insurance carriers, and other professional organizations routinely warn lawyers of scams attempting to target attorneys.

43.     Common among the scams targeting law firms, are scams in which a fraudster will provide the law firm with a fraudulent check and ask the law firm to place the check in the law firm's trust account. The fraudster will then direct the law firm to disburse the funds to accounts controlled by the fraudster, thereby, stealing and laundering the money through the law firm's trust account.

44.     In a posting dated May 1, 2018, on avoidaclaim.com, a website controlled by Lawyers' Professional Indemnity Company, the website warned of a scam entitled "Equipment purchase scam using the name Chris Williams."[1]

45.     In that posting, the author warns that two Ontario law firms received an email purportedly from "Chris Williams looking to retain them to make a large commercial purchase." The posting then warns that "[t]his appears to be a bad cheque scam (with a real company likely being impersonated) that presents as a legal matter requiring the assistance of a lawyer."

---

[1] https://avoidaclaim.com/2018/equipment-purchase-scam-using-the-name-chris-williams/ last visited April 26, 2019.

46.     According to correspondence from Farris Bobango, the fraudulent scheme described herein involved a purported purchase of an excavator, with the parties involved being Chris F. Williams, Honey Well Fire & Security, Edward B. Lee and Mr. Steven Sheehan.

47.     According to correspondence from Farris Bobango, Farris Bobango has no documents relating to any obligation of Ward Kraft to pay Farris Bobango the sum of $247,500.00.

48.     Despite Ward Kraft not being known as a party to the purported excavator purchase and despite the fact that Farris Bobango had no documents relating to any obligation of Ward Kraft to Farris Bobango, Farris Bobango accepted a check purportedly drawn on the account of Ward Kraft made payable to Farris Bobango in the amount of $247,500.00.

49.     By accepting the Ward Kraft check and depositing the check in its IOLTA account, Farris Bobango owed fiduciary duties to Ward Craft.

50.     The Ward Kraft check lists a phone number for Ward Kraft.

51.     Neither Scott Williams nor any other attorney or employee of Farris Bobango called the Ward Kraft phone number on the check to determine whether the check was authorized.

52.     It would have taken mere minutes for Farris Bobango to call Ward Kraft and discover that the check was not authorized.

53.     According to the Farris Bobango website, Mr. Williams is an attorney who practices in the area of banking law, and "has authored several banking/financial services publications, and has long been active in Tennessee Bankers Association activities, as a member & former Chair of its Bank Lawyers Committee and as a member of its Government Relations, Bank Security and Compliance Committees."

54.     Upon information and belief based upon the description of the fraudulent transaction from Farris Bobango, and the similarities to the scam described on avoidaclaim.com,

it appears that the Chris Williams scam was the scam that targeted Ward Kraft by employing the use of the Farris Bobango trust account with the assistance of Farris Bobango attorneys.

55.     The Chris Williams scam contains numerous indicia of fraud, which a lawyer exercising the appropriate degree of care would recognize. These indicia of fraud include but may not be limited to:

    a.   The request was unsolicited;

    b.   The request sought "closing service," as opposed to legal service;

    c.   A reference to "in your state," as opposed to a specific geographic area;

    d.   The request originated from outside of the United States.

    e.   Ward Kraft is not a construction company that engages in the business of excavator sales; and

    f.   Farris Bobango had no prior relationship with Ward Kraft.

56.     Upon information and belief based upon the lack of explanation in correspondence from Farris Bobango, despite the indicia of fraud, Farris Bobango failed to take any action to determine the true nature of the transaction.

## COUNT I – Breach of Contract
### (UMB)

57.     Plaintiffs incorporate paragraphs 1 through 56 of their complaint as if fully set forth herein.

58.     UMB's business relationship with Ward Kraft was governed by the signature card, account agreement, and the uniform commercial code as adopted by Kansas.

59.     Pursuant to the signature card, account agreement, and K.S.A. 84-4-401, UMB was only permitted to pay checks drawn on Ward Kraft's account that were properly payable.

60.     UMB paid $247,500.00 based upon the altered check and charged Ward Kraft's account in the amount of $247,500.00. This payment was not authorized by Ward Kraft and was not properly payable.

61.     Because the amount was not properly payable, UMB breached its contract with Ward Kraft and violated K.S.A. § 84-4-401 when it paid the altered check and charged Ward Kraft's account.

62.     As a result of UMB breach of contract and violation of K.S.A. § 84-4-401, Plaintiffs have suffered a loss in excess of $270,648.50, plus prejudgment interest.

## COUNT II – Breach of Fiduciary Duty as Escrow Agent
### (Farris Bobango)

63.     Plaintiffs incorporate paragraphs 1 through 62 of their Complaint as if fully set forth herein.

64.     As described herein, Farris Bobango agreed to act as an escrow agent for what it purportedly thought was a purchase of an excavator.

65.     As an escrow agent, Farris Bobango owed fiduciary duties to all parties to the transaction including Ward Kraft.

66.     By accepting a check from Ward Kraft in connection with its agreement to act as an escrow agent, Farris Bobango owed a fiduciary duty to act in accordance with Ward Kraft's instructions.

67.     As described herein, Farris Bobango did not act in accordance with Ward Kraft's instructions, and made no effort to ensure that it was acting in accordance with Ward Kraft's instructions.

68.     As a result of Farris Bobango's breach of fiduciary duties as an escrow agent, Plaintiffs have suffered a loss in excess of $270,648.50, plus prejudgment interest.

## COUNT III – Breach of Fiduciary Duty / Professional Negligence
### (Farris Bobango)

69.     Plaintiffs incorporate paragraphs 1 through 68 of their Complaint as if fully set forth herein.

70.     As described herein, Farris Bobango believed it was representing Ward Kraft with respect to the purchase of an excavator.

71.     In connection with that purported representation, Farris Bobango accepted a check purportedly from Ward Kraft and deposited that check in Farris Bobango's IOLTA account.

72.     As a law firm, Farris Bobango owes fiduciary duties to its clients or purported clients with respect to funds held in its IOLTA account.

73.     As a law firm, Farris Bobango owes its clients or purported clients a duty to act with reasonable and ordinary care.

74.     Farris Bobango, through its attorneys and employees, failed to act with requisite degree of care with respect the acceptance of the altered Ward Kraft check and with respect to the purported transaction described herein.

75.     Farris Bobango, through its attorneys and employees, failed to recognize the indicia of fraud with respect to the transaction described herein, and failed to take reasonable steps to prevent the fraud that it aided in perpetuating.

76.     Farris Bobango further failed to properly train and supervise its attorneys and employees in recognizing well publicized fraud schemes targeting law firms.

77.     As a result of Farris Bobango's breach of fiduciary duty and professional negligence, Plaintiffs have suffered a loss in excess of $270,648.50, plus prejudgment interest.

## COUNT IV – Conversion
### (Farris Bobango)

78.     Plaintiffs' incorporate paragraphs 1 through 77 of their Complaint as if fully set forth herein.

79.     Farris Bobango exercised the right of control or ownership of the altered check and Ward Kraft's funds.

80.     By paying Ward Kraft's funds to itself, and to the accounts controlled by the fraudster, Farris Bobango exercised dominion and control over Ward Kraft's funds to the detriment of Ward Kraft, and without authorization of Ward Kraft.

81.     As a result of Farris Bobango's conversion of Ward Kraft's check and funds, Plaintiffs have suffered a loss in excess of $270,648.50, plus prejudgment interest.

## COUNT V – Negligence
### (Farris Bobango)

82.     Plaintiffs incorporate paragraphs 1 through 81 of their Complaint as if fully set forth herein.

83.     Farris Bobango owed Ward Kraft a duty of care to not take the Ward Kraft funds and transfer them to a fraudster.

84.     Farris Bobango was negligent and breached that duty of care by taking or failing to take certain precautions to prevent Ward Kraft's funds from being transferred to a fraudster including:

    a.   Failing to recognize the indicia of fraud in the solicitation of closing services for the purported excavator sale;

    b.   Failing to supervise and train its employees and attorneys regarding scams targeting law firms;

c.  Failing to call the phone number on the Ward Kraft check to ensure that the check was authorized; and

d.  Failing to verify the identity of its purported clients.

85.   It was foreseeable that Ward Kraft would suffer damage when Farris Bobango deposited the unauthorized Ward Kraft check and paid out the proceeds of the check.

86.   As a direct and proximate result of Farris Bobango's negligent acts or omissions, Plaintiffs have suffered losses in excess of $270,648.50, plus prejudgment interest.

WHEREFORE Plaintiffs Twin City Fire Insurance Company and Ward Kraft, Inc. pray for judgment in their favor and against Defendants UMB Bank, N.A. and Farris Bobango PLC, in an amount in excess of $270,648.50, for prejudgment interest, for its costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

DYSART TAYLOR COTTER
McMONIGLE & MONTEMORE, P.C.

By: _/s/ Matthew W. Geary_
      Carol Z. Smith              KSBar#13276
      Matthew W. Geary        KSBar#20686
      4420 Madison Avenue, Suite 200
      Kansas City, MO  64111
      T: (816) 931-2700
      F: (816) 931-7377
      csmith@dysarttaylor.com
      mgeary@dysarttaylor.com

ATTORNEYS FOR PLAINTIFFS
TWIN CITY FIRE INSURANCE CO. &
WARD KRAFT, INC.