**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

WARD KRAFT, INC., and TWIN )
CITY FIRE INS. CO., )
　)
　　　　Plaintiffs, )
　)
v. )
　) Case No. 19-2211-CM-GEB
UMB BANK, N.A., and )
FARRIS BOBANGO PLC, )
　)
　　　　Defendants. )
_____)
　)
UMB BANK, N.A., )
　)
　　　　Third-Party Plaintiff, )
　)
v. )
　)
TRIUMPH BANK, )
　)
　　　　Third-Party Defendant. )

## MEMORANDUM AND ORDER

Plaintiff Ward Kraft, Inc., a Kansas corporation, and its insurer plaintiff Twin City Fire Ins. Co., based in Connecticut and Indiana (collectively "plaintiffs"), have filed this lawsuit against defendants UMB Bank, N.A. ("UMB"), of Missouri, and Tennessee law firm Farris Bobango PLC, seeking recovery for their alleged role in a fraudulent check-cashing scheme. (Doc. 1.) UMB has filed a counterclaim against Ward Kraft (Doc. 10), a cross-claim against Farris Bobango (Doc. 10), and a third-party complaint (Doc. 11) against Farris Bobango's Tennessee bank, Triumph Bank. This court's jurisdiction is based on diversity, pursuant to 28 U.S.C. § 1332. Before the court are Farris Bobango's motions to dismiss plaintiffs' complaint (Doc. 17) and UMB's crossclaim (Doc. 20), both based on

-1-

Farris Bobango's arguments that this court lacks personal jurisdiction over the Tennessee law firm and that venue is improper. Though the motions are largely identical and based on the same jurisdictional facts, the court will address them separately. Based on the reasons set forth below, the court denies both motions, finding its exercise of personal jurisdiction over Farris Bobango to be proper.

*Farris Bobango's motion to dismiss plaintiffs' complaint*

In their complaint, plaintiffs describe the following series of events. On April 9, 2018, Ward Kraft issued and mailed a payment to a vendor, Arcis Digital Security Inc. in Ontario, Canada, in the form of a company check for $7,500. Prior to its safe arrival, the check was intercepted and stolen by an unknown wrongdoer. Based on plaintiffs' investigation, that wrongdoer, or a confederate, using the name Chris Williams, approached Farris Bobango by email with a business proposal. Chris Williams explained that he was seeking legal assistance with the purchase of an excavator. Chris Williams' contact at Farris Bobango, attorney Scott Williams, agreed to the representation, explaining that the firm's charge would be $4,800. Chris Williams then altered the Ward Kraft check: changing the payee to Farris Bobango; changing the date to April 30, 2018; and changing the amount of the check to $247,500. Farris Bobango deposited the check to the firm's trust account at Triumph Bank. On presentment, on May 4, 2018, UMB paid the funds to Farris Bobango. Farris Bobango retained its $4,800 fee, then wired $230,000 to an account controlled by Chris Williams. Farris Bobango transferred the balance, $8,038.55, to another account controlled by Chris Williams, but those funds were returned to Farris Bobango by the receiving bank.[1]

Ward Kraft discovered the improper payment when it looked over its May bank statement from UMB. In accordance with UMB protocol, Ward Kraft submitted a fraudulent item affidavit to the bank; however, UMB has not repaid any of the missing funds to Ward Kraft. Similarly, Farris

---

[1] Though not included in the complaint, according to plaintiffs and based on information provided by Farris Bobango, the $8,038.55 balance was then wired to "Mr. Sheehan," presumably another account controlled by Chris Williams and/or his co-conspirators. (Doc. 32, Ex. A.)

-2-

Bobango has refused to refund any of the funds to plaintiffs, including its $4,800 fee. Ward Kraft undertook an investigation and learned from Farris Bobango that the other purported parties to Chris Williams' excavator purchase included Honey Well Fire & Security, Edward B. Lee and Steven Sheehan.

Ward Kraft made a claim to its insurance company, which, pursuant to the policy, paid the face amount of the altered check, less a $10,000 retention, and covered the costs of the investigation, $23,148.50. According to plaintiffs, they fell victim to a common scam in which law firms are tricked into laundering stolen money through their trust accounts. In fact, plaintiffs learned that two Ontario law firms had unwittingly participated in this scam when approached by a "Chris Williams." (Doc. 1, at ¶¶ 43–45.) Arguing that, had Farris Bobango exercised proper care, it would have detected the fraudulent nature of Chris Williams' business deal, plaintiffs have sued the law firm for breach of its fiduciary duty, negligence and conversion. In the complaint, plaintiffs assert that Farris Bobango is subject to personal jurisdiction in this court because: the law firm directed its actions in Kansas by accepting Ward Kraft's check; it believed that it was representing Ward Kraft; it intended to act as an escrow agent for Ward Kraft; and it injured Ward Kraft in Kansas through its tortious conduct. (Doc. 1, at ¶ 10). Plaintiffs argue that venue in this court is proper pursuant to Ward Kraft's contract with UMB, and because the injuries resulting from Farris Bobango's tortious conduct took place in the District of Kansas. Plaintiffs also sue UMB for breach of contract, for violating, *inter alia*, its account agreement with Ward Kraft.

In its motion to dismiss, Farris Bobango argues that it does not have sufficient contacts with Kansas for the proper exercise of jurisdiction; it committed no tortious acts in Kansas and it did not direct any action in Kansas. Fed. R. Civ. P. 12(b)(2). Moreover, it argues that venue is improper

because the events or omissions that give rise to plaintiffs' claims did not take place in Kansas. Fed. R. Civ. P. 12(b)(3). (Doc. 18.)

### *Personal jurisdiction*

A plaintiff has the burden to establish that the court's exercise of personal jurisdiction over a defendant is proper. *OMI Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 2005). In ruling on a motion to dismiss and determining whether a plaintiff has fulfilled this burden, the court assumes the allegations in the complaint are true to the extent they are not controverted, and resolves all factual disputes the plaintiff's favor. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When the jurisdictional issue is raised early in the litigation and there is no evidentiary hearing, a plaintiff may defeat a motion to dismiss with a prima facie showing that personal jurisdiction exists by demonstrating facts that, if true, would support jurisdiction. *Id.*; *OMI Holdings*, 149 F.3d at 1091. In order to overcome this prima facie showing, the defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Where the court's subject matter jurisdiction is based on the parties' diversity of citizenship, personal jurisdiction is established by the law of the forum state; in this case, Kansas. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011); Fed. R. Civ. P. 4(e). Kansas' long-arm statute, Kan. Stat. Ann. § 60-308(b), extends the reach of Kansas courts to the full extent permitted by the due process clause of the federal constitution. *Marcus Food*, 671 F.3d at 1166. Consequently, the court may skip the state statutory analysis and proceed directly to a determination of whether the court's exercise of jurisdiction comports with the principles of due process. *Id.* To avoid the prospect of making an individual subject "to the binding judgment of a forum with which he has established no meaningful 'contacts, ties or relations,'" the Supreme Court has instructed courts to identify at least

minimum contacts between the defendant and the forum state. *Burger King*, 471 U.S. at 471–72 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). If minimum contacts are demonstrated, then the court must ensure "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 325 U.S. at 316 (internal quotations omitted). Jurisdiction may be general, that is, where a defendant has "continuous and general business contacts" with the forum; or it may be specific, meaning that the defendant has purposefully directed his or her activities at the forum state and the lawsuit arises from those activities. *OMI Holdings*, 149 F.3d at 1091. It is this second type, specific jurisdiction, that plaintiffs allege in their efforts to make Farris Bobango subject to suit in this court.

Farris Bobango objects and argues that it was engaged by Chris Williams and did not believe that its services had been retained by Ward Kraft. It had not solicited Williams' business, in Kansas or anywhere else. Farris Bobango simply accepted Williams' check, deposited it in its bank, and wired the funds back out – all in Tennessee. Ward Kraft was not a party to the purchase and sale agreement for the excavator, nor was there any contractual or other arrangement between Ward Kraft and the law firm. Just because Ward Kraft's name was on the check, Farris Bobango argues, does not make Ward Kraft a party to the transaction, at any stage. Farris Bobango attaches no affidavit or other supporting documentation to its motion to dismiss. (Docs. 17, 18.)

Plaintiffs see it differently, arguing that Farris Bobango directed its activities to Kansas when it accepted a check from a Kansas company, acted as an escrow agent for a Kansas company, took and retained attorneys' fees from a Kansas company, and represented a Kansas company in a purported purchase and sale transaction that was to take place in Kansas. (Doc. 32, at 2.) Moreover, through its facilitation of Chris Williams' criminal scheme, Farris Bobango caused harmful financial impact to a Kansas company, thereby committing a tortious act in Kansas. Despite Farris Bobango's claims that it

did not believe it was doing business with Ward Kraft, plaintiffs argue that the events demonstrate that "the only logical inference is that Farris Bobango believed 'Chris F. Williams' was a representative of Ward Kraft and was located in Kansas." (Doc. 32, at 8.) Plaintiffs argue that these acts are sufficient to establish Farris Bobango's minimum contacts with the state of Kansas.

The parties also dispute the admissibility of a series of exhibits that Farris Bobango has submitted with its reply memorandum. (Docs. 36-1–36-7.) According to Farris Bobango, these documents, mostly emails between Chris Williams and Scott Williams, demonstrate that there was no activity directed from Farris Bobango to Kansas. (Doc. 36, at 2.) Plaintiffs argue that the court may not consider these documents, as the court "generally will not consider evidence or arguments raised for the first time in a reply brief." *Kan. Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-2605-JWL-DJW, 2005 WL 327144, at 1 (D. Kan. Feb. 3, 2003). While plaintiffs have articulated the general rule, there are occasions for exceptions. *See Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 229 F.R.D. 208, 210 (D.N.M. 2005). In an effort to make a fair determination about its exercise of personal jurisdiction, the court has discretion to review evidence as it accumulates. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 n.3 (10th Cir. 2008). Besides, plaintiffs were permitted to file a sur-reply in response to Farris Bobango's supplemental filing. (Doc. 41-1.) Nevertheless, there is a more significant obstacle to the consideration of Farris Bobango's exhibits.

As recited above, the court takes the plaintiffs' allegations in the complaint to be true "to the extent they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Fabara v. GoFit, LLC*, 308 F.R.D. 380, 385 (D.N.M. 2015). A defendant may challenge the allegations "by an *appropriate* pleading." *Pytlik v. Prof'l Res. Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989) (emphasis added) (citing *Becker v. Angle*, 165 F.2d 140, 141 (10th Cir. 1947). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and

'the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.'" *Wenz*, 55 F.3d at 1505 (citing *Fed. Dep. Ins. Corp. v. Oaklawn Apts.*, 959 F.2d 170, 174 (10th Cir. 1992)). In the present case, Farris Bobango has presented no affidavit. Instead, it has presented a series of redacted and partially redacted emails. (Docs. 36-1–36-5, 36-7). Some of the emails are undated (Doc. 36-2) and some of the exhibits are designated with page numbers, such as 7 or 6, indicating that the exhibit is a single page taken from a longer, unsubmitted email string. (Doc. 36-2, 36-3). Some emails are obviously redacted. (Doc. 36-7.) Sometimes, when a single sheet contains more than one message, the messages are not presented in a chronological or reverse-chronological order, but instead jump around in time. (Doc. 36-4, 36-5.) For example in Doc. 36-5, Scott Williams asks Chris Williams for the name of his business in order to perform a conflict-of-interest check, on March 20, 2018, at 2:51 p.m. The apparently-responsive email, stating "the company is Trouw Nutrition Inc. for your conflict check," appears to have arrived earlier that morning, at 9:37 a.m., also on March 20. A final exhibit referenced in the reply as exhibit H-H, purporting to be a letter from UMB to Triumph Bank, is omitted altogether. (Doc. 36, at 3–4.) These peculiarities undermine the reliability of the exhibits, and fail to make "a compelling case" that jurisdiction would be improper. *OMI Holdings*, 149 F.3d at 1091. Consequently, the court disregards these unsupported exhibits.

Left then with the plaintiffs' allegations in the complaint, and deeming them credible, the court holds that they are sufficient to establish that Farris Bobango had minimum contacts with Kansas such to justify the court's exercise of personal jurisdiction. There is no question that Farris Bobango's alleged actions, unwitting or not, facilitated the criminal scheme and caused or contributed to plaintiffs' injuries. The more difficult question is whether those actions were purposefully directed to Ward Kraft in Kansas. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir.

2017). To aid in answering this question, the court looks to the analytic framework referred to as the "harmful effects" test. *Id.* at 905 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). "Purposeful direction may also be established . . . when an out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the forum state." *Id.* (emphasis in original). The harmful effects test is fulfilled if there was: "(a) an intentional action . . ., that was (b) expressly aimed at the forum state . . ., with (c) knowledge that the brunt of the injury would be felt in the forum state." *Old Republic Ins. Co.*, 877 at 905 (quoting *Dudnikov*, 514 F.3d at 1072). Plaintiffs assert, and the court concurs, that Farris Bobango had every reason to believe that it was entering into an agreement to legally represent an agent or employee of Ward Kraft when it was approached by Chris Williams. Farris Bobango intentionally undertook this representation, and understood the potential for its client to be harmed should its representation be negligent, or otherwise contrary to accepted standards in the legal profession. A law firm's legal representation of a Kansas client which results in harm to that client establishes purposeful direction and provides an adequate basis for a finding of minimum contacts. *See Skepnek v. Roper & Twardowsky, LLC*, C.A. No. 11-4102-KHV, 2012 WL 4463490, at *3 (D. Kan. Sept. 27, 2012); *Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach LLP*, 106 P.3d 74, 82 (Kan. App. Ct. 2005).

It remains for the court to determine whether its exercise of jurisdiction offends "traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)). This is a five-factor test for "reasonableness" in which the court must evaluate: the burden on the defendant; the forum state's interest in resolving the dispute; the plaintiff's interest in convenient and effective relief; the judicial system's interest in resolving controversies efficiently; and the states' interest in furthering social policy. *OMI Holdings* at 1095–1096. This analysis operates on a sliding scale with the minimum

contacts analysis; that is, "[t]he weaker the minimum contacts, the less unreasonableness a defendant need show." *Ezfauxdecor, LLC v. Appliance Art Inc.*, C.A. No. 15-9140, 2016 WL 676359, *3 (D. Kan. Feb. 17, 2016). While there is an inarguable burden on Farris Bobango to travel to Kansas to defend this suit, the other four reasonableness factors weigh in favor of plaintiffs. With the addition of cross-claims and third-party claims, this lawsuit has become more complex and involves entities from various states. No forum will be perfectly convenient for all parties. As the injured parties, plaintiffs are clearly interested in the most convenient forum, and the state of Kansas is interested in resolving the matter on behalf of its citizens. The federal judicial system's ability to resolve this dispute efficiently would be best served by proceeding in this court, rather than a dismissal and refiling in another forum, where inevitably another round of motions to dismiss would be elicited by other inconvenienced parties. Lastly, the states' interest in furthering social policy weighs in favor of permitting this suit to go forward expeditiously in order to explore the precise nature of the nefarious check-cashing scheme, as well as to identify which parties are the victims and which are perpetrators. For these reasons, the court holds that its exercise of personal jurisdiction over Farris Bobango is proper, and this portion of Farris Bobango's motion to dismiss is denied.

*Venue*

Plaintiffs assert in their complaint that venue is proper in this court because their case "concerns breach of fiduciary duty and tort claims where the place of injury is in the District of Kansas." (Doc. 1, ¶ 8.) Farris Bobango responded with a motion to dismiss the complaint based on the argument that venue in this court is improper, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1391. The federal statute provides that a civil action may be brought in a judicial district in which any defendant resides, with residency defined as any judicial district "in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(b)(1),

(c)(2). Because the court has found personal jurisdiction to be proper, it follows that venue in this district is also proper.

### *The motion to dismiss UMB's crossclaim*

In its crossclaim against Farris Bobango for breach of presentment warranties, UMB indicates that personal jurisdiction is based on the allegation that "Farris Bobango intentionally directed actions into the State of Kansas by accepting for deposit an allegedly fraudulent check drawn on the UMB account of Ward Kraft, a Kansas corporation and Kansas citizen." (Doc. 10 ¶ 4.) Because its claim is based on the same transaction that gives rise to plaintiffs' claims, UMB also incorporates by reference the jurisdictional allegations in plaintiffs' complaint. Further, UMB incorporates plaintiffs' opposition to Farris Bobango's motion to dismiss, as "the arguments and authorities set forth in Plaintiff's Opposition (Dkt. #32) are equally applicable here." (Doc. 34, at 1.) This jurisdictional analysis requires the court to assess the extent of Farris Bobango's contacts with Kansas and the reasonableness of haling the firm into court here – in other words, the same analysis performed above. The same analysis leads to the same result. Plaintiffs and UMB have made a prima facie case for this court's exercise of personal jurisdiction over Farris Bobango, which has not been controverted by affidavit or other compelling evidence or documentation from Farris Bobango. Venue in this court is also appropriate for the same reasons outlined above. Consequently, the court denies Farris Bobango's motion to dismiss UMB's crossclaim.

**IT IS THEREFORE ORDERED** that defendant Farris Bobango PLC's two motions to dismiss for lack of personal jurisdiction and improper venue are denied. (Docs. 17, 20.)

Dated this 25th day of October, 2019, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**
